UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | Docket no. 09-CR-9-P-S |
| DAVID WIDI, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON MOTION FOR TO SUPPRESS AND
SUPPLEMENTAL MOTION TO SUPPRESS**

Before the Court are Defendant's Motion to Suppress (Docket # 92) and Supplemental Motion to Suppress (Docket # 117). Having considered the evidence presented at today's hearing, as well as the arguments advanced by counsel, the Court GRANTS IN PART and DENIES IN PART the Motion to Suppress and GRANTS the Supplemental Motion to Suppress.

**I.     RELEVANT FACTS**

Based on the affidavit of Special Agent Paul McNeil, Magistrate Judge Rich issued a search warrant for Defendant David Widi's apartment, laptop computer, and two outbuildings located on the property. The warrant allowed the officers to search for firearms and ammunition, as well as evidence of marijuana growing and distributing.

On November 28, 2008, the Defendant was observed leaving his house in a vehicle with another man. Officers followed the vehicle into the Irving Gas Station, which was approximately 600 feet from Defendant's residence. Defendant entered the store and, upon exiting, was approached by Eliot Police Officer Robert Brown. Officer Brown placed the Defendant in handcuffs, after which Agent McNeil explained that they were going to execute a search warrant on the Defendant's apartment. Upon request, the Defendant turned the keys to

his apartment over to the officers. The Defendant was told that he was not under arrest but that he would be detained while the search warrant was executed. The Defendant indicated that he would like to be present during the search and was returned to the yard of his home in the rear of a police cruiser.

Once the Defendant had returned to his apartment building, he waited outside with Detective Kevin Curran while his apartment was searched. Agent McNeil and other officers used the keys given to them by the Defendant to enter the apartment. Immediately upon entering the Defendant's apartment, the executing officers smelled marijuana. They also observed ammunition and a gun safe in the living room. One of the two bedrooms in the apartment was set up as a marijuana growing operation.

While the search was being conducted, the Defendant remained handcuffed outside of his apartment building. He was under the constant supervision of at least one police officer. The Defendant was not given any Miranda warnings. While Agent McNeil was executing the search warrant, Detective Curran asked the Defendant for the combination to the gun safe. Defendant stated that the safe belonged to a friend but admitted that he was aware that at least one firearm was located in the safe.

Agent McNeil then left the apartment and came over to speak with the Defendant. Agent McNeil asked the Defendant for the combination to the gun safe so that they could avoid damaging it while opening it. The Defendant refused to provide the combination. Agent McNeil then determined that, based on the marijuana and ammunition already located in the Defendant's apartment, he had probable cause to arrest the Defendant. The Defendant was told that he was under arrest and was informed of his Miranda rights, which he indicated that he understood. Defendant then agreed to speak with Detective Curran and Eliot Police Lieutenant Cady, who

had just arrived on the scene. Defendant responded to their questioning, which involved not only the gun safe but also other issues such as whether anyone else lived with the Defendant in his apartment. The Defendant was later taken to the Eliot Police Department and booked into police custody.[1]

The gun safe was eventually forced open with the assistance of a locksmith. Inside, officers found firearms, ammunition, and marijuana. The full search of the Defendant's apartment revealed additional firearms, a marijuana growing operation along with resources and supplies, and thousands of rounds of ammunition.

Defendant's van was parked outside of the apartment in the driveway. A trained K-9 unit performed a sniff test on the exterior of the van but did not alert positively for controlled substances. Agent McNeil arranged for the van to be towed to the impound lot. Once the van was in the impound lot, a second drug-detection dog performed a sniff test and, at that time, alerted positively on the vehicle. Based on the canine alert and the Defendant's arrest on drug charges, the Maine District Court issued a search warrant for the Defendant's van. Inside the van, officers found a small box of ammunition, a small baggie containing marijuana, and a few marijuana roaches.

## II. ANALYSIS

In his Motion to Suppress, the Defendant seeks to suppress the evidence seized from his apartment on the basis that the search warrant was not supported by probable cause. Defendant also moves to suppress his statements made at the scene of the search arguing that they were obtained in violation of Miranda. In his Supplemental Motion to Suppress, the Defendant moves

---

[1] The Court's instant order does not address any issue related to conversations with legal counsel that occurred in the booking room at the Eliot Police Department because such conversations were not addressed in either Defendant's Motion to Suppress or his Supplemental Motion to Suppress. At the Court's hearing on February 22, 2010, defense counsel indicated that he may file a motion in limine addressing the admissibility of these conversations. If such motion is filed, the Court will address the issue at that time.

to suppress the evidence obtained in the search of his van because the van was unlawfully seized from his property. Each of these contentions will be addressed in turn below.

### A. Validity of the Search Warrant

Defendant argues that the affidavit submitted in support of the search warrant issued by Magistrate Judge Rich did not adequately establish probable cause to search his apartment. The sufficiency of an affidavit is a question of law and the Court looks only to the four corners of the affidavit to determine if probable cause existed to issue the warrant. United States v. Vigeant, 176 F.3d 565, 569 (1st Cir. 1999). "Probable cause exists when the affidavit upon which a warrant is founded demonstrates in some trustworthy fashion the likelihood that an offense has been committed." United States v. Schaefer, 87 F.3d 562, 565 (1st Cir. 1996). A Magistrate Judge's determination of probable cause is entitled to substantial deference. See Illinois v. Gates, 462 U.S. 213, 238-39 (1983).

The Court finds that the affidavit in support of the search warrant sufficiently established probable cause to justify issuance of the warrant. First, the Court finds that the information provided by the informants was not stale. Although the informants had not been in the Defendant's apartment for at least a few weeks, they provided information of a marijuana growing operation, which is not a fly-by-night affair. See Schaefer, 87 F.3d at 568 (information related to growing marijuana need not be as current because it is an ongoing and entrenched activity); United States v. McKeever, 5 F.3d 863, 866 (5th Cir. 1993) (same). Moreover, both informants provided information indicating that the Defendant was stockpiling weapons to "prepare for the end of the world" which suggests that his possession of firearms was not fleeting. Thus, the evidence provided by the informants, which was admittedly at least a few weeks old, was not stale for purposes of probable cause.

Defendant argues that the affidavit was insufficient because there is no information on the reliability of either confidential informant provided therein. Although the Court acknowledges that the affidavit lacks evidence related to the reliability of the two confidential informants, the information provided by the informants was sufficiently corroborated. First, each informant corroborates the other. See Schaefer, 87 F.3d at 566 (consistency between two confidential informants helps to validate both accounts). For example, both informants stated that they had observed the same types of firearms in the Defendant's residence and said that Defendant was stockpiling firearms to "prepare for the end of the world." Both informants also similarly described the inside of the Defendant's apartment. Second, Agent McNeil personally corroborated some of the information with a drive-by of the Defendant's residence during which he observed that all three windows of his apartment were completely covered. United States v. Greenburg, 410 F.3d 63, 68 (1st Cir. 2005) (officer's first-hand observation of conduct consistent with informant's tip supports the tip's veracity). Thus, the Court finds that the affidavit submitted by Agent McNeil sufficiently established probable cause to issue the search warrant for Defendant's apartment.

Moreover, even if the affidavit did not establish probable cause, the evidence need not be suppressed based on the good faith exception. See United States v. Leon, 468 U.S. 897, 922 (1984). In Leon, the Supreme Court held that, with limited exception, the exclusionary rule should not apply when police officer reasonably relies in good faith on a warrant that is subsequently determined to be invalid. Id. at 923. The affidavit here had ample indicia of probable cause "to render official belief in its existence" reasonable. Id. at 923. Accordingly, Defendant has failed to establish a basis for suppressing the evidence found in his apartment.

Defendant's Motion to Suppress is DENIED with respect to all of the evidence found in his apartment as a result of the execution of the search warrant in this case.

### B.     Defendant's Statements at the Scene of the Search

#### 1.     Pre-Miranda warnings

It is undisputed that the Defendant made a number of statements prior to having been given Miranda warnings. The only issue in dispute is whether he was in custody at the time those statements were made.

The Court finds that the questioning of Defendant during the search of his home was a custodial interrogation. Upon approaching the Defendant at the gas station, Officer Brown immediately placed the Defendant in handcuffs. Although the officers told the Defendant that he was not under arrest, he remained in handcuffs and was transported back to his residence in a police vehicle. During the execution of the warrant, he was not allowed back in his house and was not told that he was free to leave. During the search of his home, the Defendant remained handcuffed and was constantly under the supervision of police officers.

The Government contends that the Defendant's statements are admissible because it had the right to detain him during the search. The Court does not question the officers' right to detain the Defendant while they were executing the warrant. See Michigan v. Summers, 452 U.S. 692, 705 (1981). However, the fact that a detention is permissible under the Fourth Amendment does not make the detention any less custodial for Miranda purposes. See United States v. Revels, 510 F.3d 1269, 1274 (10th Cir. 2007) ("Although some detentions not rising to the level of a formal arrest may be reasonable within the meaning of the Fourth Amendment, those same detentions may nonetheless create a custodial situation in which Miranda was designed to operate."); United States v. Newton, 369 F.3d 659, 673 (2d Cir. 2004) (holding that

whether a stop is permissible under the Fourth Amendment is irrelevant to the Miranda analysis); United States v. Kim, 292 F.3d 969, 976 (9th Cir. 2002) ("[W]hether an individual detained during the execution of a search warrant has been unreasonably seized for Fourth Amendment purposes and whether that individual is 'in custody' for Miranda purposes are two different issues."); United States v. Smith, 3 F.3d 1088, 1097 (7th Cir. 1993) ("the inquiry into the circumstances of temporary detention for a Fifth and Sixth Amendment Miranda analysis require a different focus than that for a Fourth Amendment [seizure]."). "[O]fficers conducting a lawful search on a person's home are not permitted to use the suspect's detention to their official advantage by attempting to extract self-incriminating statements from the suspect." United States v. Mittel-Carey, 456 F. Supp. 2d 296, 302 (D. Mass. 2006).

The key to determining whether an interrogation was custodial, and therefore whether Miranda warnings should have been given prior to interrogation, is whether "a reasonable person would believe he is 'in custody' under the circumstances." See United States v. Pagan-Santini, 451 F.3d 258, 263 (1st Cir. 2006). The Supreme Court has held "the safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" Berkemer v. McCarty, 468 U.S. 420, 440 (1984) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)). There is no precise formula for determining when an individual is subject to a *de facto* arrest; rather, the Court must consider the totality of the circumstances. United States v. Trueber, 238 F.3d 79, 93 (1st Cir. 2001). "Relevant circumstances include, among other inquiries, 'whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed on the suspect, and the duration and character of the interrogation." Id. (quoting United States v. Ventura, 85 F.3d 708, 711 (1st Cir. 1996)).

In this case, the Court finds that the Defendant was subject to a *de facto* arrest and, therefore, Miranda warnings should have been given prior to any interrogation. Although the Defendant was on his property and was only questioned by a couple of officers, he was handcuffed during the interrogation, continuously supervised by uniformed police officers, and had already been transported in the back of a police cruiser. The First Circuit has held that handcuffs are "one of the most recognizable indicia of traditional arrest." United States v. Acosta-Colon, 157 F.3d 9, 18 (1st Cir. 1998). The use of handcuffs combined with the officers' control over the Defendant's whereabouts shows that the environment of the interrogation was "police dominated." See Berkemer, 468 U.S. at 438-39. Moreover, the officers' questioning was designed to elicit incriminating information. The officers asked the Defendant for the combination to a gun safe located inside of his house. At the time, the officers knew that the Defendant was a convicted felon and that, therefore, his possession of firearms would be illegal.

Having considered all of the facts in this case, the Court finds that the Defendant's freedom was curtailed to a degree typically associated with formal arrest. Because the Defendant was in custody when subjected to interrogation, the Court GRANTS the Defendant's Motion to Suppress to the extent that he seeks to exclude his statements made prior to being read his Miranda warnings. The Court notes, however, that this ruling applies only to statements made by the Defendant in response to questioning by the officers. Any inculpatory acts and/or statements that were not made in response to questioning are not subject to this ruling.

2. Post-Miranda Warnings

After the marijuana and ammunition was found in the Defendant's apartment, Agent McNeil notified the Defendant that he was under arrest and read him Miranda warnings. The

Defendant then gave a number of statements to the officers and now moves to suppress these statements.

The Defendant argues that the Miranda warnings were ineffective based on the prior unlawful questioning of the Defendant. Having considered the factors outlined by the Supreme Court in Missouri v. Seibert, 542 U.S. 600 (2004), the Court finds that the Miranda warnings given to the Defendant effectively accomplished the object of Miranda and, therefore, any statements made after he was given the warnings are admissible. Although there was no significant change in the personnel questioning the Defendant or in the setting of the interrogation, the other factors weigh in favor of finding that the Miranda warning was effective. The Court notes that the pre-Miranda questioning was focused only on obtaining the combination to the gun safe while the post-Miranda questioning extended into other subjects such as whether the Defendant lived alone in his apartment. The Court also notes that the setting was not overly coercive. Even after the Defendant was read his Miranda rights, he remained standing with the officers outside of his apartment. Most significantly, there is no indication that the officers in this case deliberately adopted the strategy of "question-first" in an attempt to undermine the purpose of Miranda warnings. See Seibert, 542 U.S. at 616 (holding that "question-first" strategy "threatens to thwart Miranda's purpose of reducing the risk that a coerced confession would be admitted.").

In United States v. Materas, 483 F.3d 27 (1st Cir. 2007), the First Circuit faced a very similar situation. Materas was present in the home while officers were executing a search warrant. Prior to his having been read Miranda warnings, the officers asked Materas where the drugs were located so that they could avoid tearing apart his entire house. Materas pointed out the drugs and was placed under arrest. He was then given his Miranda warnings, following

9

which he made a number of inculpating statements. The parties agreed that Materas's initial statement regarding the location of the drugs was obtained in violation of Miranda so the only issue was whether the Miranda warnings cured the taint of the prior unlawful questioning. The First Circuit held that the statements made after Materas was read his Miranda warnings were admissible because the pre-Miranda questioning was not systemic or extensive. Because the pre-Miranda questioning was limited in scope, the court held that the Miranda warnings effectively cured the taint of the unlawful questioning.

Similarly, in this case, the pre-Miranda questioning of the Defendant was limited in nature and primarily focused on obtaining the combination to the gun safe found in his residence. This questioning was designed to prevent the officers from having to break into the safe or call a locksmith to gain entry. The Defendant was not extensively questioned about the marijuana or ammunition found in his apartment before he was given his Miranda warnings.

The Court finds that the Miranda warnings given to the Defendant effectively advised him of his rights, which he indicated that he understood prior to making additional inculpating statements. Defendant's Motion to Suppress is DENIED with respect to the statements made after he was read his Miranda warnings.

### C.     Evidence Seized from the Van

Defendant has also filed a Supplemental Motion to Suppress seeking to suppress the evidence found in his van. Contrary to the Government's assertion, the Court finds that removing the vehicle from the private driveway at Defendant's apartment constituted a seizure of the vehicle. The Supreme Court has held that moving an individual's belongings from one location to another constituted a substantial intrusion on the individual's possessory interests. United States v. Place, 462 U.S. 696, 710 n.9 (1983). The vehicle belonged to the Defendant and

was on private property until the officers had it towed to the impound lot.  This was a seizure for purposes of the Fourth Amendment.  Whether the seizure violated the Fourth Amendment is a separate question, but there is no doubt that the Defendant's vehicle was seized in this case.

The Government does not argue that the Defendant's van was encompassed by the search warrant issued by Magistrate Judge Rich.  It is clear from the face of the warrant that the officers were not authorized to search or seize any vehicles.  Thus, it is uncontested that the officers conducted a warrantless seizure of the Defendant's vehicle.  The Fourth Amendment allows the warrantless seizure of a vehicle if the exigencies of the situation demand it or if one of the recognized exceptions to the warrant requirement applies.  See Place, 462 U.S. at 701.  The Government argues that the warrantless seizure of the van was proper because it was the Defendant's only vehicle and drugs and firearms were discovered in the Defendant's apartment.

There is no doubt that the van was in clear view of the officers while they were executing a lawful search warrant.  As such, if the officers had probable cause to believe that the vehicle was the instrumentality of a crime or was likely to contain evidence of a crime, the warrantless seizure did not violate the Fourth Amendment.  See United States v. Ross, 456 U.S. 798, 809 (1982); United States v. McCoy, 977 F.2d 706, 710 (1st Cir. 1992) ("Under the 'automobile exception,' the only essential predicate for a valid warrantless search of a motor vehicle by law enforcement officers is 'probable cause to believe that the vehicle contains contraband or other evidence of criminal activity.'") (quoting United States v. Panitz, 907 F.3d 1267, 1271 (1st Cir. 1990)).  There is nothing immediately apparent about the criminality of a vehicle itself.  Coolidge v. New Hampshire, 403 U.S. 443, 462 (1971) ("The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears.").  There is also no evidence that, at the time the van was seized, the officers had any information connecting the

van to Defendant's drug activities or possession of firearms. That drugs and firearms were found inside Defendant's apartment does not mean *ipso facto* that the officers had probable cause to believe that related evidence would be found in the van. Moreover, a drug-detection dog at the scene did not positively alert to the van. Absent some information linking the van to the crimes for which the Defendant was arrested, the Court cannot find that there was probable cause to seize the van.

The Government alleges that the vehicle was seized to prevent the destruction of evidence but has put forth no evidence showing that there was any concern that evidence in the vehicle would be imminently destroyed absent seizure of the vehicle. The Defendant—the sole user of the van—was in police custody and therefore did not have access to the vehicle. There is no allegation that Defendant was acting in concert with others or that he had arranged for someone to move or destroy the evidence in the van. Thus, the Government has failed to show that exigent circumstances justified the warrantless seizure of the vehicle.

Ultimately, this case comes down to the general rule that seizures conducted without a warrant are per se unreasonable unless one of the narrow exceptions applies. Having failed to establish that any of the exceptions apply to the seizure of the Defendant's vehicle, that seizure violated the Fourth Amendment and the evidence found therein must be suppressed as the so-called fruit of the poisonous tree. Accordingly, the Defendant's Supplemental Motion to Suppress is GRANTED and the evidence found in the vehicle is suppressed.

### III.   CONCLUSION

For the reasons stated above, Defendant's Motion to Suppress (Docket # 92) is GRANTED IN PART and DENIED IN PART.  Defendant's Supplemental Motion to Suppress (Docket # 117) is GRANTED.  The Government will be permitted to introduce any statement made by the Defendant after he was given Miranda warnings[2] but cannot, in their case-in-chief, use any statement made by the Defendant prior to those warnings.  The Government is also precluded from using any evidence seized from the Defendant's vehicle in its case-in-chief.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 23rd day of February, 2010.

---

[2] This includes the Defendant's phone call to his Grandmother as that conversation occurred after Miranda warnings were given.