UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>DAVID WIDI, )<br>)<br>Defendant. ) | Docket no.  09-CR-9-P-S |

**ORDER ON DEFENDANT'S MOTION TO VACATE CONVICTION**

Before the Court are Defendant's Motion to Vacate Conviction and Order A New Trial (ECF No. 332) and the Government's Motion to Stay Proceedings (ECF No. 339).  For reasons explained herein, both Motions are DENIED.

**I.     LEGAL STANDARD**

Federal Rule of Criminal Procedure 33 allows a defendant to file a motion for a new trial based on newly discovered evidence within three years of the verdict.  "[I]f the interest of justice so requires," the court may vacate the judgment of conviction and allow a new trial.  Fed. R. Crim. 33(a).  Under the First Circuit standard, a defendant requesting a new trial based upon newly discovered evidence must establish that:  "(i) the evidence in question was unknown or unavailable to him at the time of trial; (ii) his failure to learn of it did not result from a lack of due diligence on his part; (iii) the evidence is material; and (iv) the evidence, if available upon retrial, would likely bring about an acquittal."  United States v. Mathur, 624 F.3d 498, 503 (1st Cir. 2010) (citing United States v. Huddleston, 194 F.3d 214, 218 (1st Cir. 1999); United States v. Wright, 625 F.2d 1017, 1019 (1st Cir.1980)).  "Every element of this test . . .  is essential, and a failure to establish any one element will defeat the motion.  United States v. Connolly, 504

F.3d 206, 212 (1st Cir. 2007) (citing United States v. Maldonado-Rivera, 489 F.3d 60, 66 (1st Cir. 2007)).

In his pending motion, Defendant Widi presents two separate arguments that he asserts warrant relief under Federal Rule of Criminal Procedure 33. First, he claims his Count I felon-in-possession conviction must be vacated as a matter of law because there is no valid predicate felony. Second, he proffers newly discovered evidence obtained as a result of a civil case that he asserts would justify a *Franks* hearing.

## II.   DISCUSSION

### A.   Background

On April 20, 2010, a jury convicted David Widi of possession of firearms and ammunition by a felon in violation of 18 U.S.C. § 922(g)(1) & 924(a)(2) (Count I), as well as manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(D) (Count II). At trial, Widi's predicate felony conviction was introduced by way of a stipulation, which indicated:

> The Government and defendant agree and stipulate to the following: On December 15th, 2004, defendant was convicted of a crime punishable by a term of imprisonment exceeding one year in the Rockingham County Superior Court, Portsmouth, New Hampshire, in Docket No. 03-S-1714.

(See Trial Transcript, Vol. I (ECF No. 235) at 137 (introducing Gov't Ex. 10 without objection).) In relevant part, the jury was ultimately instructed that, in order to convict Widi of the Count I charge, the Government was required to prove beyond a reasonable doubt that Widi "had been convicted in any court of at least one crime punishable by imprisonment for a term exceeding one year." (Trial Transcript. Vol. II (ECF No. 236) at 391.) However, no evidence on this element was received beyond the stipulation.

Following the jury's verdict, on October 14, 2010, Mr. Widi was sentenced to 108 months on Count I and a concurrent 60 months on Count II. Mr. Widi appealed his conviction

and sentence, and it was affirmed by the First Circuit on July 6, 2012.  See generally United States v. Widi, 684 F.3d 216 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 893 (2013), *reh'g denied*, 133 S. Ct. 1628 (2013).

In connection with his direct appeal, Widi argued that his 2004 conviction was not a qualifying predicate felony under 18 U.S.C. § 921(a)(20) because of a civil rights restoration.  At the time, Widi did not have the newly discovered evidence attached to the pending motion. Nonetheless, the First Circuit addressed his argument explaining:

> Widi, in his pro se brief, says that his prior offense was not a felony, but he stipulated to the prior felony at trial and, while we may disregard a stipulation where justice requires, *United States v. Torres–Rosario,* 658 F.3d 110, 116 (1st Cir. 2011), *cert. denied,* 132 S. Ct. 1766 (2012), Widi provides no compelling reason for us to do so; indeed, our own review of what was before the court confirms that the stipulation was appropriate.
>
> Widi also argues that his civil rights were restored after his prior conviction and so he should not be treated as a felon in possession. 18 U.S.C. § 921(a)(20). This statutory exception is an affirmative defense, *United States v. Bartelho,* 71 F.3d 436, 440 (1st Cir. 1995), so the burden is on the defendant, *United States v. Hartsock,* 347 F.3d 1, 10 (1st Cir. 2003). The evidence of such a restoration now relied on by Widi is highly doubtful but was in any case never presented to the district court. There was no error.

Widi, 684 F.3d at 224.  Likewise, Widi's direct appeal argued that "the affidavit that underpinned the search warrant was inadequate." Id. at 221.  Based on the record then presented, the First Circuit explained:

> Widi succeeded in suppressing evidence seized from his vehicle and pre-*Miranda* statements made in response to questioning, but the search warrant was readily upheld, as it should have been. It rested on statements by two different confidential informants that they had made multiple visits to Widi's apartment and had seen both marijuana and guns; one also described a marijuana growing operation in the second bedroom.
>
> This was ample to show a "fair probability that contraband or evidence of a crime" would be found, *Illinois v. Gates,* 462 U.S. 213, 238 (1983), and more

3

> than ample to trigger *Leon*'s protection for reasonable reliance on a warrant even if the latter were marginally defective, *United States v. Leon,* 468 U.S. 897, 922 (1984). That the informants had criminal records or sought to benefit from cooperation goes only to weight; and while one informant's information was six months old, the other had been at the apartment only three weeks before.

Id. at 221. Widi's pending motion now claims to have newly discovered evidence that requires the Court to reexamine both his 2004 predicate felony conviction and the sufficiency of the affidavit used to obtain the 2008 search warrant. The Court considers each of Widi's assertions in turn.

**B.     The 2004 Predicate Felony**

Widi's status as a person prohibited from possessing firearms and ammunition was the result of a 2004 felony conviction for reckless conduct in violation of N.H. Rev. Stat. Ann. § 631:3.[1] As alleged in the Second Superseding Indictment (ECF No. 181), Widi was convicted of this charge by way of a judgment entered in Rockingham Superior Court on December 15, 2004. On April 15, 2006, Widi received an early release on the sentence he ultimately served related to this charge. In connection with his release, a "Two Thirds Release Form" was signed by the Superintendent of the Rockingham County Department of Corrections. In relevant part, Widi's Two Thirds Release Form (ECF No. 332-1) included the following standard language:

> This inmate's right to vote and hold any future public office of which he/she was deprived by New Hampshire RSA 607-A:2 are hereby restored and that he/she suffers no other disability by virtue of his/her conviction and sentence except as otherwise provided by this RSA.

(Two Thirds Release Form, dated 4/15/2006 (ECF No. 332-1).) This restoration language is required pursuant to New Hampshire's Uniform Act on Status of Convicted Persons, which provides that a person sentenced for a felony conviction loses the right to vote in elections or

---

[1] This conviction was considered a class B felony under New Hampshire law. See N.H. Rev. Stat. Ann. § 631:3(II).

hold public office until the convicted person receives a final discharge of that sentence. See N.H. Rev. Stat. Ann. §§ 607-A:2 & 607-A:5.

With respect to Count I, Widi claims his Two Thirds Release Form is newly discovered evidence and that, with this evidence in the record, he would be acquitted of the felon-in-possession charge as a matter of law. This argument relies on 18 U.S.C. § 921(a)(20), which explains that predicate felonies are to "be determined in accordance with the law of the jurisdiction in which the proceedings were held." Id.; see also United States v. Bartelho, 71 F.3d 436, 440 (1st Cir. 1995) ("The significance of § 921(a)(20)'s definitional nature is that the trial judge bears the responsibility of determining as a matter of law whether a prior conviction is admissible in a § 922(g)(1) case.").

The federal statutory definition then explains:

> Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20). To qualify as a post-conviction restoration under this statute, the First Circuit has held that the restoration must include "the rights to vote, to hold public office, and to serve on a jury." United States v. Estrella, 104 F.3d 3, 5-6 (1st Cir. 1997) (citing United States v. Caron, 77 F.3d 1, 2 (1st Cir.) (*en banc*), *cert. denied,* 518 U.S. 1027 (1996)); see also Logan v. United States, 552 U.S. 23, 28 (2007) ("While § 921(a)(20) does not define the term 'civil rights,' courts have held . . . that the civil rights relevant under the above-quoted provision are the rights to vote, hold office, and serve on a jury.") "[E]ach of the three core 'civil rights' must be substantially, but not perfectly, restored." Estrella, 104 F.3d at 6 (footnote omitted). "In applying this test, [the Court must be] guided by the rationale behind Congress' use of 'civil rights restored' as a touchstone: the notion that by reinvesting a person with core civic

5

responsibilities, the state vouches for the trustworthiness of that person to possess firearms (unless that right is withheld)." Id. at 6-7 (citing United States v. Indelicato, 97 F.3d 627, 630 (1st Cir. 1996)).

### 1. The Failure to Present this Newly Discovered Evidence at Trial Reflects a Lack of Due Diligence

Having reviewed the entirety of the record submitted in connection with the pending motion, it is apparent that obtaining the Two Thirds Release Form was time consuming and complicated by the fact that the document was not properly filed in 2006 when it was originally issued. The record reflects that Widi's counsel initially sent a letter to Rockingham Superior Court requesting a copy of the indictment and docket index in January 2009. (See Def. Ex. 16 (ECF No. 338-1).) By all accounts, the Two Thirds Release Form was not included or noted within the documents received in response to that request. Defendant has also provided the Court with a declaration of Corina Barcus, dated March 28, 2013 (ECF No. 332-3) as well as correspondence and motions dated between March 2011 and March 2012 (ECF Nos. 332-4—332-15), all of which document a year of persistent effort by Widi to obtain his Two Thirds Release Form.

However, Defendant has failed to explain why the diligence that resulted in him obtaining the document in 2013 could not have achieved the same result prior to trial. In short, the Court concludes that Defendant cannot meet the requisite standards of showing that the 2006 Two Thirds Release Form was unavailable to him and could not have been obtained had the same due diligence been undertaken prior to trial.[2]

---

[2] The Court notes that Defendant requested and received five continuances prior to proceeding to trial. See Speedy Trial Orders (ECF Nos. 30, 44, 77, 84 & 142). However, it does not appear Defendant ever specifically requested any continuance in order to pursue obtaining documents related to his predicate felony.

6

In the context of this case, the lack of diligence finding is further bolstered by Defendant's stipulation to the 2004 predicate felony at trial.  In short, not only did Widi fail to present the necessary evidence on an issue on which he bore the burden of production and persuasion, he actually stipulated to the fact while apparently believing a "certificate of discharge" existed.  Under these circumstances, Defendant's stipulation amounts to a waiver.[3] United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011) ("At least where a party makes an explicit and specific concession, practical reasons favor holding a party to such a concession, whether given in exchange for a quid pro quo or merely to avoid evidence that the party would prefer not to be presented (such as the nature of the prior felony in a felon-in-possession case)."), *cert. denied,* 132 S. Ct. 1766 (2012).  Recognizing that the First Circuit in Torres-Rosario indicated "courts may excuse waivers and disregard stipulations where justice so requires," the Court does not believe that such an exceptional excuse is warranted on the record presented here.  658 F.3d at 116.

### 2. Widi's Newly Discovered Evidence of Civil Rights Restoration is Not Likely to Lead to an Acquittal

Even if the Court were to disregard Widi's trial stipulation to the predicate felony and find his post-trial effort to obtain the Two Thirds Release Form to be adequately diligent, the Two Thirds Release Form does not amount to a complete civil rights restoration.  Thus, the Court alternatively concludes that Widi's newly discovered evidence would not yield a probable acquittal on Count I.

As the First Circuit has held,

> A claim of restoration of civil rights is in the nature of an affirmative defense. As a result, once a prior felony conviction and corresponding loss of civil

---

[3] It may be that such a waiver gives rise to a claim for ineffective assistance of counsel. However, in the Court's view, it is apparent that Widi, through his trial counsel, agreed to enter into the predicate felony stipulation introduced at trial.

> rights is proven by the government, as with any other factual condition, the presumption is that that condition remains. . . . It is up to the defendant to raise the issue and produce evidence showing that changed circumstances make the original condition inapplicable.

Bartelho, 71 F.3d at 440 (internal citations omitted).  Thus, to warrant an acquittal, Widi's newly discovered evidence would have to overcome this presumption and support a finding by this Court, as a matter of law, that Widi had his civil rights restored prior to November 2008.

The Government necessarily concedes that Widi's Two Thirds Release Form proves that two key civil rights were restored as of April 15, 2006: (1) the right to vote and (2) the right to hold public office.  (See Gov't Response (ECF No. 335) at 7.)  However, this proof brings Widi only "two-thirds" of the way to proving civil rights restoration under § 921(a)(20); as a final step, Widi would need to prove that his right to sit on a jury was also restored.

Under New Hampshire law, Widi did lose his right to sit on a jury upon being convicted of a felony.[4]  See N.H. Rev. Stat. Ann. § 500-A:7-a(V) ("A juror shall not have been convicted of any felony which has not been annulled or which is not eligible for annulment under New Hampshire law.")  Thus, the question becomes whether Widi had his right to sit on a jury restored prior to November 2008.  The answer to this question turns on the New Hampshire law related to annulment of criminal records.  See N.H. Rev. Stat. Ann. § 651:5.  New Hampshire allows for the annulment of "the record of arrest, conviction and sentence of any person . . . by the sentencing court . . . if in the opinion of the court, the annulment will assist in the petitioner's rehabilitation and will be consistent with the public welfare."  N.H. Rev. Stat. Ann § 651:5(I).  To obtain an annulment, New Hampshire law requires a "timely" petition, which may only be

---

[4] To the extent Defendant invokes United States v. Caron, 77 F.3d 1, 2 (1st Cir. 1996) in support of his argument that the "two-thirds restoration" is sufficient, this argument is without merit.  Id. at 6 ("[A]ffirmative action has taken place with respect to the right to sit on a jury (subject to some contingency) and the right to hold public office. Only the right to vote was not taken away. The words of § 921(a)(20) literally apply: Caron is 'a person [who] ... has had civil rights restored.'").  Unlike the defendant in Caron, Widi in fact lost the civil right at issue and, as explained herein, has not had that right restored.

filed "when the petitioner has completed all the terms and conditions of the sentence and has thereafter been convicted of no other crime" for a set period of time; in the case of a class B felony, the time period is generally set at five years. N.H. Rev. Stat. Ann. § 651:5(III)(d). Widi has proffered no evidence that he actually petitioned for and received an annulment under N.H. Rev. Stat. Ann. § 651:5; thus, his right to serve on a jury may only be restored if he is "eligible for annulment under New Hampshire law." N.H. Rev. Stat. Ann. § 500-A:7-a(V).

As discussed in the parties' submissions, the issue of whether and when being "eligible for annulment" amounts to restoration of the right to sit on a jury was recently presented to the District Court in the District of New Hampshire. See United States v. Howe, D.N.H. Docket No. 12-cr-101-01-JD, 2012 WL 4757891 (D.N.H. Oct. 4, 2012). In the Howe case, the District Court similarly had a defendant charged with violating 18 U.S.C. § 922(g)(1) whose predicate felony was a 1995 conviction for a New Hampshire class B felony. While the record showed that Howe had his last criminal conviction in May 2002, the Government maintained that Howe remained unable to sit on a jury and, thus, did not have his civil rights fully restored absent an actual annulment. The District Court disagreed. Finding that at least five years had passed between Howe's last conviction in 2002 and the 2012 felon-in-possession charge, the District Court concluded that Howe was "eligible for annulment," and, thus, was eligible for jury service under N.H. Rev. Stat. Ann § 500-A:7-a(V). See id. at *2-*3.

In the context of the present case, the Government has urged the Court not to adopt the reading of N.H. Rev. Stat. Ann. § 500-A:7-a(V) adopted by the District Court in Howe and notes that the issue has been presented to the First Circuit for review. (See Gov't Reponse at 8-9 & n. 1; Gov't Motion to Stay.) The Government maintains that New Hampshire felony convictions must be actually annulled in order to have the right to serve on a jury restored under N.H. Rev.

9

Stat. Ann. § 500-A:7-a(V). In the Court's assessment, it is unnecessary for this Court to disagree with Howe or wait until the First Circuit has completed its review of Howe.

Rather, even under the statutory construction adopted in Howe, Widi does not appear to qualify for jury service under the "eligible for annulment" prong of N.H. Rev. Stat. Ann. § 500-A:7-a(V). On December 15, 2004, Widi was sentenced on a Class B felony. Because of a probation violation, he did not complete all the terms and conditions of his sentence until April 15, 2006. Given these dates, Widi would have been eligible for an annulment under N.H. Rev. Stat. Ann. § 651:5(III)(d) after April 15, 2011 if he had not been convicted of any other crime. Thus, even under the statutory construction adopted in Howe, Widi's right to serve on a jury was not restored on or about November 28, 2008, the date the Government claimed him to be a felon-in-possession in violation of federal law.[5]

Invoking precedents from the Seventh Circuit, Defendant alternatively argues that he read the "suffers no other disability" language of the Two Thirds Release Form to restore all of his civil rights, including the right to serve on a jury. See United States v. Burnett, 641 F.3d 894, 896 (7th Cir. 2011); Buchmeier v. United States, 581 F.3d 561, 567 (7th Cir. 2009). However, the Court concludes that Widi's subjective belief that all of his civil rights were restored based on the Two Thirds Release Form is not sufficient to make out a civil rights restoration defense under § 921(a)(20). As noted in Buchmeier, there remains a circuit split on the issue of whether a civil rights restoration is properly governed by the written notice sent to a defendant or by the state statutes at large. See 581 F.3d at 565 (collecting cases). The First Circuit has not resolved that issue although it has found that "the restoration of civil rights need not be focused or

---

[5] Having determined that Widi cannot prove that all three of the required civil rights have been restored, the Court declines to address the Government's additional argument that Widi cannot make out a civil rights restoration defense if, as the Government asserts, he was still prohibited from possessing firearms under New Hampshire state law.

10

individualized," and thus, allows for review of applicable state statutes in order to find restoration. Caron, 77 F.3d at 4. In Widi's case, the notice at issue contained explicit "except as otherwise provided" language that directs a reader back to "this [Revised Statutes Annotated]." (Two Thirds Release Form, dated 4/15/2006 (ECF No. 332-1).) In the Court's view, this language and the prior decisions within the First Circuit lead to the conclusion that Widi may not rely solely on his Two Thirds Release Form to establish the requisite civil rights restoration under § 921(a)(20) when state statute makes it clear he had not yet qualified for full restoration of his civil rights.

In the absence of newly discovered evidence showing all of Widi's civil rights were restored by November 2008, the Court concludes there is no basis to vacate his conviction on Count I and no possibility that a retrial would bring acquittal. As explained earlier, the Court additionally and alternatively holds that Widi exhibited a lack of due diligence in obtaining the evidence necessary to establish that his 2004 predicate felony did not fall within § 921(a)(20). Thus, the Court DENIES Widi's request to vacate his Count I conviction based on newly discovered evidence.

C.     **The 2008 Search Warrant**

    1.  **The Legal Standard for a *Franks* Hearing**

In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that a criminal defendant may obtain an evidentiary hearing to challenge the sufficiency of an executed warrant if he can make a substantial showing that the affidavit supporting the warrant included deliberately or recklessly false statements. To warrant a *Franks* hearing, a defendant bears the burden of overcoming the presumption of validity that attaches to the affidavit supporting the warrant. Thus, the defendant must make "allegations of deliberate falsehood or of reckless

disregard for the truth, and those allegations must be accompanied by an offer of proof." Id. at 171.  However, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." Id. at 171-72.  Given this standard, "a defendant must meet a high bar even to get a *Franks* hearing in the first place." United States v. Tzannos, 460 F.3d 128, 136 (1st Cir. 2006).

### 2. Widi's Newly Discovered Evidence Related to the Search Warrant

In support of his belated request for a *Franks* hearing, Widi proffers statements contained in a declaration of Special Agent Paul McNeil, dated October 15, 2012 (ECF No. 332-2) (hereinafter "McNeil Declaration").  The McNeil Declaration was filed in connection with a civil *Bivens* action that Widi filed *pro se* and is currently pending within the District of Maine.  See Widi v. McNeil et al., D. Me. Docket No. 2:12-cv-188-JAW.

Special Agent McNeil was the agent who applied for the search warrant underlying this federal criminal case.  See Application & Affidavit for Search Warrant, dated Nov. 25, 2008 (ECF No. 92-1) (hereinafter "2008 Search Warrant").  In the 2008 Search Warrant, Agent McNeil recounts information about Widi received from two confidential informants, identified only as CI#1 and CI#2.  While the two confidential informants were never identified, Agent McNeil provided information about both confidential informants, including that each had a prior criminal history and a history of selling drugs to Widi.  Additionally, the 2008 Search Warrant acknowledged that one confidential informant was currently incarcerated and was providing the information contained in the affidavit in hopes of reducing his period of incarceration.  (See 2008 Search Warrant at 5-6.)

Widi now speculates that one of the confidential informants was a prior roommate named Neil Vaccaro.[6] In the McNeil Declaration, Agent McNeil says that prior to the filing of his search warrant affidavit, Vaccaro contacted him to report his motorcycle had been stolen by Widi. (See McNeil Declaration ¶¶ 7-8.) Widi claims this newly discovered evidence proves Vaccaro had an "axe to grind" and a "pecuniary incentive" to provide the information contained in the 2008 Search Warrant affidavit. (Def. Reply (ECF No. 338) at 14.) Assuming for a moment that Vaccaro was in fact CI#1 or CI#2,[7] the allegedly additional known bias related to the allegedly stolen motorcycle would go only to the credibility and weight of the information provided by one of the confidential informants. Even if this information had been known prior to the 2010 trial, the Court would not have convened a *Franks* hearing based solely on this proffer.

Ultimately, the Court concludes that even if all of the information Widi now proffers had been included in the search warrant affidavit, there would still have left "ample facts, corroborated by police observations of the house, to provide probable cause." United States v. Adams, 305 F.3d 30, 37 (1st Cir. 2002). Thus, the Court DENIES Widi's request for a *Franks* hearing based on newly discovered evidence. In the Court's assessment, Widi's proffer in support of this request amounts to information that would not likely bring about an acquittal or any further suppression of evidence upon retrial.

---

[6] The Court notes that Widi testified at trial about Mr. Vaccaro and his motorcycle. In his testimony, Widi insisted that Vaccaro gave him the motorcycle as collateral on a $5,000 loan and then had reported it stolen only after being threatened by federal agents that the motorcycle would be seized as part of Widi's drug proceeds if Vaccaro did not report it stolen. (See 4/20/09 Widi Trial Testimony (ECF No. 227) at 15-16; 24-26; 53-54.)

[7] The Government notes in its Response that it has never actually identified either confidential informant.

**III. CONCLUSION**

Therefore, the Court hereby DENIES Defendant's Motion to Vacate Conviction and Order A New Trial (ECF No. 332) and the Government's Motion to Stay Proceedings (ECF No. 339).

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 16th day of August, 2013.